UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES NAPIER,

     Applicant,

v.                              CASE NO. 8:21-cv-953-SDM-CPT

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

     Napier applies under 28 U.S.C. § 2254 for a writ of habeas corpus (Doc. 1) and challenges his convictions for burglary and grand theft, for which Napier is imprisoned for fifteen years.  Numerous exhibits support the response.  (Doc. 6-2)  The respondent asserts that one ground is procedurally barred.  (Doc. 6 at 7–8)

## I. BACKGROUND[1]

     At 11:00 P.M. on July 13, 2014, Marybelle Martinez returned home with her two sons after a three-hour trip to the airport in Orlando, Florida.  (Doc. 6-2 at 166–67, 177–78)  Martinez's son observed a back door window shattered, and a light and fan in the kitchen unexpectedly turned on.  (Doc. 6-2 at 168–69, 179–81)  A small wooden box that contained jewelry was missing from Martinez's bedroom. (Doc. 6-2 at 171–72)  Shattered glass appeared both inside and outside the home,

---

[1] This summary of the facts derives from the trial transcripts.

blood covered shards of glass on the broken window, and fresh blood was smeared on the outside of the back door. (Doc. 6-2 at 170–71, 181, 183–84) A sheriff's deputy collected a swab of the blood on the back door. (Doc. 6-2 at 195–97, 202)

Another sheriff's deputy identified Napier as a suspect, advised him of his *Miranda*[2] rights, and interrogated him. (Doc. 6-2 at 222–23) Napier admitted that he twice had driven on the road where Martinez lived because his ex-girlfriend and her father lived nearby but denied that either his fingerprints or DNA would appear at Martinez's home. (Doc. 6-2 at 224, 233–34, 242–43) The deputy collected a buccal swab from Napier, and DNA from blood at Martinez's home matched Napier's DNA. (Doc. 6-2 at 225–28, 260–66, 275–76)

During the defense's case, Cynthia Hall testified that, on the night of the burglary, Napier attended a party at his brother's home and did not leave the party. (Doc. 6-2 at 284–86) Around 9:00 P.M., Napier, who was very intoxicated and suffered both a cut above his eye and a busted nose, started bleeding, and "quite a bit" of blood stained his shirt. (Doc. 6-2 at 286–88) Hall cleaned Napier's wounds, laid him in bed, and stayed with him for the rest of the night. (Doc. 6-2 at 286–88) Napier's mother testified that she attended the party, saw the cut above Napier's eye, stayed awake until sunrise, and never saw Napier leave. (Doc. 6-2 at 296–98)

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II. COGNIZABILITY, EXHAUSTION, AND PROCEDURAL DEFAULT

The respondent argues that ground one is both procedurally defaulted and not cognizable on federal habeas. (Doc. 6 at 7–8) Federal habeas relief for a person in custody under the judgment of a state court is available only if the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citing *Henry*, 513 U.S. at 365–66).

### Ground One:

Napier asserts that he was "illegally convicted and sentenced based on an outdated version of the burglary statute." (Doc. 1 at 5) He contends that he exhausted his remedies in state court by raising the ground in a motion for post-conviction relief. (Doc. 1 at 6) In his post-conviction motion, Napier asserted both that the information failed to charge a crime and that trial counsel deficiently performed by not moving to dismiss the information for failing to charge a crime.

(Doc. 6-2 at 458–61)  Generously construed, the federal application raises both claims.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

Because Napier asserts that the information failed to charge a crime, and "[t]he sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction," the due process claim is cognizable on federal habeas.  *Heath v. Jones*, 863 F.2d 815, 821 (11th Cir. 1989) (citing *DeBenedictis v. Wainwright*, 674 F.2d 841 (11th Cir. 1982)).  Because the Sixth Amendment guarantees a defendant the right to effective assistance of counsel, an ineffective assistance of counsel claim is cognizable on federal habeas.  *Holsey v. Thompson*, 462 F. App'x 915, 917–18 (11th Cir. 2012).

In his motion for post-conviction relief Napier fairly presented the ineffective assistance of counsel claim by reciting the standard in *Strickland v. Washington*, 466 U.S. 668 (1984).  (Doc. 6-2 at 457–58)  However, because Napier presented the due process claim under state law and not as the violation of a federally protected right (Doc. 6-2 at 458–60), he failed to meet the exhaustion requirement.  *Preston v. Sec'y, Fla. Dep't Corrs.*, 785 F.3d 449, 460 (11th Cir. 2015) ("[S]imply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts.").  *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) ("We therefore hold that '[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (quoting *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317, 1345 (11th Cir. 2004)).

The due process claim is barred from federal review absent a showing of either "actual cause and prejudice" or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Because Napier proffers no specific facts to establish either (Doc. 7 at 2–3), the due process claim in ground one is procedurally barred from federal review.

## III.  <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 governs this proceeding. *Wilcox v. Fla. Dep't Corrs.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. . . . Under the "contrary to" clause, a federal habeas court may grant the writ if the state court

arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 694. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating

state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues an explanatory and reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125. A respondent may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 584 U.S. at 125–26.

In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Napier's Rule 3.850 motion for post-conviction relief. (Doc. 5-2 at 519) A state appellate court's *per curiam* decision without a written opinion warrants deference under Section 2254(d)(1). *Wright v. Sec'y, Dep't Corrs.*, 278 F.3d 1245, 1254 (11th Cir. 2002). *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the state court record:

- 7 -

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim
> on the merits. Section 2254(d)(1) refers, in the past tense, to
> a state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record
> in existence at that same time, *i.e.*, the record before the state
> court.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  Napier bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).  The state court's rejection of Napier's claims warrants deference in this federal action.  (Doc. 6-2 at 491–97)

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Napier asserts ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668 (1984), the Supreme Court set forth a two-part test
> for analyzing ineffective assistance of counsel claims.
> According to *Strickland*,

- 8 -

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Napier must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To meet this burden, Napier must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Napier cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted).

Napier must show that the state court ruled contrary to *Strickland*, unreasonably applied *Strickland*, or unreasonably determined a fact. 28 U.S.C. § 2254(d). In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001). The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

### A. <u>Grounds of IAC Before and During Trial</u>

<u>Ground One:</u>

Napier asserts that trial counsel deficiently performed by not moving to dismiss the burglary charge in the information. (Docs. 1 at 5–6, 6-2 at 460–61, and

7 at 2–3)  The post-conviction court denied the claim as follows (Doc. 6-2 at 494)

(state court record citations omitted):

> The body of the information as to the burglary charges that Defendant ". . . did knowingly enter or remain in a dwelling . . . ." § 810.02(1), Fla. Stat., defines "burglary" differently depending on whether the offense was committed before or after July 1, 2001.
>
> The earlier definition states that ". . . 'burglary' means entering or remaining in a dwelling . . . with the intent to commit an offense therein . . . ."
>
> The present definition provides in relevant part: " . . . 'burglary' means:
>
> 1. Entering a dwelling . . . with the intent to commit an offense therein . . . or
>
> 2. Notwithstanding a licensed or invited entry, remaining in a dwelling . . .
>
> > a. Surreptitiously, with the intent to commit an offense therein . . . ."
>
> Defendant does not specify how the statute inappropriately applies to his case. The Court indulges in two possibilities, neither of which has merit. [The claim] could be predicated on the assumption that no evidence was presented that Defendant "remained" in the Martinez's house. Defendant could also mean that the evidence did establish that he remained in the residence, but that doing so is not illegal under the post-2001 definition of burglary. Defendant incorrectly claims that the information's words "or remain in" only apply to the older definition of burglary. As is evident, both definitions provide for "remaining" in a dwelling as an alternative to "entering." Defendant's claim that the earlier definition "establishes that Defendant was indeed charged with what amounts to a non-existent crime" goes out of its way to ignore that "entering" is a part of both definitions. It is undisputed that the State presented ample evidence of illegal entry with the intent to steal. There is no basis for relief, and counsel was not ineffective for "failing to object to the foregoing." [The claim] is denied.

Whether the information sufficiently tracked the language of the applicable burglary statute is an issue of state law, and a state court's determination of state law receives deference in federal court. *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance — even when based on the failure of counsel to raise a state law claim — is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that [ ] counsel failed to raise turns on state law.") (citation omitted).

The information alleged that on July 13, 2014, Napier committed the burglary (Doc. 6-2 at 8):

> Jerry Hill, State Attorney for the Tenth Judicial Circuit, by and through his undersigned Assistant State Attorney, charges that Charles Douglas Napier, on or about July 13, 2014, in the County of Polk and State of Florida, did knowingly enter or remain in a dwelling, the property of Maribel Martinez, with the intent to commit an offense therein, contrary to Florida Statute 810.02.

Section 810.02(1)(b), Florida Statutes, defines a burglary committed after July 1, 2001, as:

> 1.   Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
>
> 2.   Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
>
>> a.   Surreptitiously, with the intent to commit an offense therein;

      b.      After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or

      c.      To commit or attempt to commit a forcible felony, as defined in Section 776.08.

The information did not allege that Napier committed a burglary under Section 801.02(1)(b)(2), which requires proof that the defendant remained in the residence after the victim either authorized or invited the defendant to enter. *Harris v. State*, 48 So. 3d 922, 924 (Fla. 5th DCA 2010) ("[T]he plain language of the section 810.02(1)(b)(2)(c) requires the State to prove a licensed or invited entry because it is an element of the offense. Black's Law Dictionary defines 'notwithstanding' as meaning 'despite' or 'in spite of.'").

The information alleged that Napier "did knowingly enter or remain in a dwelling . . . with the intent to commit an offense therein." (Doc. 6-2 at 8) The trial judge instructed the jury on trespass, a lesser offense that requires proof that the defendant either entered or remained in a structure (Doc. 6-2 at 345):

[Trial judge:]      To prove the crime of trespass in a structure, the state must prove the following three elements beyond a reasonable doubt: The defendant willfully entered or remained in a structure; the structure or conveyance was in the lawful possession of Marybelle Martinez; the defendant's entering or remaining in the structure was without authorization, license, or invitation by Marybelle Martinez or any other person authorized to give that permission.

"Trespass is a category two permissive lesser-included offense of burglary of a dwelling." *McCloud v. State*, 60 So. 3d 1094, 1095 (Fla. 4th DCA 2011). "Upon

request, '[a] trial court must give a jury instruction on a permissive lesser-included offense if: (1) the indictment or information alleges all the statutory elements of the permissive lesser-included offense, and (2) there is some evidence adduced at trial establishing all of those elements.'" *McCloud*, 60 So. 3d at 1095–96 (quoting *Bordes v. State*, 34 So. 3d 215, 216 (Fla. 4th DCA 2010)).

   *McCloud*, 60 So. 3d 1094, 1096, explains that to charge trespass as a lesser offense an information must allege that the defendant either entered or remained in the residence:

> The information in the instant case alleged that McCloud "did unlawfully, enter or remain in a structure, to-wit: a dwelling . . . property of Howard Schumacher, with intent to commit the offense of theft therein, contrary to F.S. 810.02(1) and F.S. 810.02(3)." We have repeatedly held that charging documents worded identically to the one in the instant case, save for the name of the victim, included all of the statutory elements of trespass. *See Bordes*, 34 So. 3d 215, 217; *Piccioni*, 833 So. 2d at 248; *Henig v. State*, 820 So. 2d 1037, 1038–39 (Fla. 4th DCA 2002) . . . .

*McKiver v. State*, 55 So. 3d 646, 649 (Fla. 1st DCA 2011) ("The information in this case alleged Mr. McKiver committed the offense of burglary of a dwelling by 'unlawfully enter[ing] or remain[ing] in a structure, to wit:  a dwelling, the property of Rhonda Carmichael, with the intent to commit an offense therein.'  Thus, the elements of trespass were adequately established in the information.").

   To charge trespass, a lesser-included offense of burglary of a dwelling, the prosecutor alleged in the information that Napier "did knowingly enter or remain in a dwelling."  (Doc. 6-2 at 8)  Because an objection to the information would not succeed, the post-conviction court did not unreasonably deny the claim.  *Pinkney*,

876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). Ground one is denied.

**<u>Ground Two:</u>**

Napier asserts that trial counsel deficiently performed by not calling Donna Napier and Crystal Napier to testify at trial.  (Doc. 1 at 7)  The post-conviction court denied the claim as follows (Doc. 6-2 at 495) (state court record citations omitted):

> Defendant claims that he advised counsel of two witnesses, Donna and Crystal Napier, who would have testified that Defendant was at a party when the burglary occurred and "never left." He sufficiently provides their names, asserts that both were available to testify at trial, offers the substance of their purported testimony, and alleges that if they were called a reasonable probability exists that he would have been acquitted.
>
> Defendant's girlfriend and mother testified at the trial. The Napiers' testimony would merely duplicate, with no additional details, what was presented at trial. Both Hall and Stone testified that Defendant was at a party during the time of the burglary. Obviously, the Napiers (having the same last name as Defendant) are also related to Defendant. Trial testimony that the house with the party belonged to Defendant's brother and Defendant's statement that Crystal Napier owned the party location indicate that Crystal is most likely Defendant's sister-in-law.
>
> "[T]rial counsel is not ineffective for failing to present cumulative evidence." *Rhodes v. State*, 986 So. 2d 501, 512 (Fla. 2008). Defendant has not shown that Crystal and Donna Napier would add anything to the defense testimony that was presented. Trial counsel was not ineffective as to this issue, nor has Defendant demonstrated a reasonable probability that the cumulative testimony would have persuaded a jury to reach a different result. [The claim] is denied.

Because Napier did not support his claim with either an affidavit or testimony by Donna Napier and Crystal Napier to demonstrate that both would testify in the

manner that he contended, the post-conviction court did not unreasonably deny the claim. *McKiver v. Sec'y, Fla. Dep't Corrs.*, 991 F.3d 1357, 1365 (11th Cir. 2021) ("[T]his [prejudice] burden is particularly 'heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative.'") (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)).

In his post-conviction motion, Napier contended that both witnesses would testify that "[he] was at the party and [ ] never left the party" and "it would be impossible for [his] blood [to appear] at the crime scene." (Doc. 6-2 at 462) At trial Cynthia Hall, testified that, on the weekend of July 12, 2014, she saw Napier at a party at a home that belonged to Napier's brother. (Doc. 6-2 at 284–86) Around 8:30 P.M. or 9:30 P.M., a person brought Napier inside the home because Napier suffered a cut above his eye and a bloody nose. (Doc. 6-2 at 286–87) Hall cleaned Napier's wounds, laid him in bed, and stayed with him for the rest of the evening. (Doc. 6-2 at 286–89) Barbara Stone, Napier's mother, testified that, on Saturday, July 12, 2014, and Sunday, July 13, 2014, she saw Napier at the party. (Doc. 6-2 at 295–96) On Sunday, Napier suffered an injury to his eye. (Doc. 6-2 at 296) Stone stayed awake all night and never saw Napier leave. (Doc. 6-2 at 297–98)

Because testimony by Donna Napier and Crystal Napier would duplicate testimony by Hall and Stone, Napier failed to demonstrate prejudice under *Strickland*, and the post-conviction did not unreasonably deny the claim. *Reaves v. Sec'y, Fla. Dep't Corrs.*, 872 F.3d 1137, 1157 (11th Cir. 2017) ("We have [ ] held that

- 16 -

counsel's failure to present cumulative evidence is not ineffective assistance.").

*Holsey v. Warden, Ga. Diag. Prison*, 694 F.3d 1230, 1260–61 (11th Cir. 2012) ("[T]he United States Supreme Court, this Court, and other circuit courts of appeals generally hold that evidence presented in postconviction proceedings is 'cumulative' or 'largely cumulative' to or 'duplicative' of that presented at trial when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury.").  Ground two is denied.

**Ground Three:**

Napier asserts that trial counsel deficiently performed by not objecting to the admission of evidence that proved that his DNA matched DNA from blood collected at Martinez's home.  (Doc. 1 at 8)  He contends that DNA from the blood deteriorated in a plastic tube.  (Doc. 1 at 8)  The post-conviction court denied the claim as follows (Doc. 6-2 at 496–97) (state court record citations omitted):

> A sample of blood retrieved from the Martinez's back door was compared to a buccal swab Brannon took from Defendant. Defendant claims possible "contamination" of the blood sample based on Sutton's testimony that "plastic . . . can possibly deteriorate DNA."
>
> Sutton testified that State's Exhibit 9, the blood sample, came to her lab on July 24, 2014. That was only eleven days after the sample was obtained and placed in a plastic tube. Brannon obtained the buccal swab [from] Defendant after interviewing Defendant on April 30, 2015. He placed the sample into a box with little holes in it because the samples "have to be able to breathe." Sutton testified that when "an item of evidence comes in," it is "tracked" and "labeled" as to who analyzes it and where it is stored. She then examined the swab. Sutton stated she repackaged the blood sample from a plastic tube into a manila envelope to prevent any deterioration.

Defendant not only reads some gap in time into Sutton's testimony, he misquotes Sutton as having testified that she repackaged the Q-Tip swab to "further" prevent any contamination. Sutton did not use the word "further," nor did she ever imply that any deterioration had occurred.

Defendant's assertions are mere speculation and are refuted by the record. There is no basis for any claim that the blood sample was stored improperly or deteriorated, or to question the validity of the blood match to the buccal swab. In turn, Defendant wrongly faults trial counsel for not calling in a DNA expert or cross-examining (apparently Sutton; Defendant again does not specify) as to "the possible deteriorated state of the blood sample . . . ." Defendant has neither established ineffectiveness of trial counsel nor any prejudice from counsel's alleged lack of cross-examination and failure to call a DNA expert. [The claim] is denied.

At trial a sheriff's deputy testified that, on July 13, 2014 (Doc. 6-2 at 187), she swabbed blood from the crime scene at Martinez's home (Doc. 6-2 at 195–97):

| [Prosecutor:] | How did you collect the DNA? |
|---|---|
| [Deputy:] | With a Q-tip. I swabbed it with a Q-tip. |
| [Prosecutor:] | So that would be what we're looking at here on State's Exhibit 3? |
| [Deputy:] | Yes. |
| [Prosecutor:] | Okay. So when you — you've been trained on how to swab for DNA? |
| [Deputy:] | Yes. |
| [Prosecutor:] | Okay. And did you follow protocol from your training in swabbing this DNA? |
| [Deputy:] | Yes. |
| . . . | |
| [Prosecutor:] | Okay. I am showing you State's Exhibit 9. Do you recognize what's in this bag? |

- 18 -

| [Deputy:] | Yes, ma'am. It's going to be the tube in which I placed a Q-tip in after the swabbing. |
| [Prosecutor:] | Okay. And what is the purpose of the tube? |
| [Deputy:] | To not — so it doesn't become contaminated. |
| [Prosecutor:] | Okay. So, it's sterile? |
| [Deputy:] | Yes. |
| [Prosecutor:] | Okay. And is this the tube that you used when you swabbed the blood from this crime scene? |
| [Deputy:] | Yes. |
| [Prosecutor:] | And then you placed the Q-tip in the tube, and — |
| [Deputy:] | Seal it. |
| [Prosecutor:] | Seal it. Okay. And so that way nothing else can get in there? |
| [Deputy:] | That's correct. |
| [Prosecutor:] | Okay. And then was this logged into evidence after? |
| [Deputy:] | Yes. |
| [Prosecutor:] | Okay. And this is a fair and accurate depiction of the exact tube you used on that day? |
| [Deputy:] | It is. |

A DNA analyst testified that on July 24, 2014, eleven days after the deputy swabbed the blood on the door, a laboratory received the swab of blood packaged in the plastic tube. (Doc. 6-2 at 259) The analyst placed a label on the plastic tube

before storing the plastic tube in an evidence locker.  (Doc. 6-2 at 259–60)  The

analyst removed the swab from the plastic tube and extracted DNA from the blood

on the swab.  (Doc. 6-2 at 260–61)  The analyst explained that she packaged the

swab in a small manila envelope because plastic "can possibly" deteriorate DNA

(Doc. 6-2 at 269):

> [Prosecutor:]    But if you wouldn't mind, just explain to the jury what is in there.
>
> [DNA analyst:]    Okay. So, this is the clear plastic tubing that the swab actually came in. However, with DNA, we ask that the biological fluids not be contained in plastic. Plastic will deteriorate — can possibly deteriorate DNA. So, what I did was I re-packaged the swab into the small manila envelope that you see.

DNA extracted from a buccal swab from Napier matched DNA extracted

from the blood on the swab.  (Doc. 6-2 at 264)  The likelihood that DNA extracted

from the blood derived from a person other than Napier was one in 8.3 quintillion.

(Doc. 6-2 at 264–66)

"'Relevant physical evidence is admissible unless there is an indication of

probable tampering.'"  *Armstrong v. State*, 73 So. 3d 155, 171 (Fla. 2011) (citation

omitted).  "In order to demonstrate probable tampering, the party attempting to bar

the evidence must show that there was a probability that the evidence was tampered

with — the mere possibility is insufficient."  *Armstrong*, 73 So. 3d at 171.  "Once the

party moving to bar the evidence has met its burden, the burden shifts to the

nonmoving party to establish a proper chain of custody or submit other evidence that tampering did not occur." *Armstrong*, 73 So. 3d at 171.

The analyst testified that she obtained a "complete DNA profile" from the blood on the swab. (Doc. 6-2 at 261) Because Napier did not support his claim with evidence demonstrating that the plastic tube deteriorated DNA from the blood, and "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation," *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985), an objection based on tampering would not succeed, and the post-conviction court did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297. Ground three is denied.

## B.  Ground of IAC on Appeal

### Ground Four:

Napier asserts that appellate counsel deficiently performed by not arguing on appeal that the prosecutor failed to prove that Napier burglarized Martinez's home and proved only that his blood appeared on the outside of the home. (Doc. 1 at 10) The state appellate court denied this claim in a decision without a written opinion. (Doc. 6-2 at 568) Napier must demonstrate that no reasonable basis supports the denial of relief. *Harrington*, 562 U.S. at 98.

*Strickland* applies to a claim of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Because trial counsel timely moved for a judgment of acquittal and argued that the prosecutor failed to prove that Napier

burglarized the home (Doc. 6-2 at 276–79), trial counsel preserved the issue for review on appeal.  § 924.051(1)(b), Fla. Stat.

On appeal, "'sufficient evidence [ ] sustain[s] a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt.'"  *Glover v. State*, 226 So. 3d 795, 804 (Fla. 2017) (quoting *Hodgkins v. State*, 175 So. 3d 741, 746 (Fla. 2015)).  If "all [ ] evidence of a defendant's guilt — *i.e.*, the evidence tending to show that the defendant committed or participated in the crime — is circumstantial," a different standard of review applies.  *Knight v. State*, 186 So. 3d 1005, 1010 (Fla. 2016).  "Where the only proof of guilt is circumstantial [ ], a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence."  *State v. Law*, 559 So. 2d 187, 188 (Fla. 1989).  "The state is not required to 'rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events."  *Law*, 559 So. 2d at 187 (quoting *State v. Allen*, 335 So. 2d 823, 826 (Fla. 1989)).  "The State is not required to rebut a hypothesis of innocence that is unreasonable."  *Westbrooks v. State*, 145 So. 3d 874, 878 (Fla. 2d DCA 2014).

When Martinez and her sons returned from the three-hour trip to the airport, Martinez's son saw the blood on the back door, and Martinez discovered that jewelry was missing from her bedroom.  (Doc. 6-2 at 167, 171–72, 177, 179–81) In closing, the prosecutor argued that this testimony and the DNA evidence proved

that Napier broke the window, unlocked the door, entered the home, and stole the jewelry.  (Doc. 6-2 at 319–20, 339–40)  DNA from the swab of blood circumstantially proved Napier's guilt.  *Twilegar v. State*, 42 So. 3d 177, 188–89 (Fla. 2010) ("'Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer that the ultimate facts in dispute existed or did not exist.'") (quoting *Davis v. State*, 90 So. 2d 629, 631 (Fla. 1956)).

During closing, trial counsel admitted that Napier's blood appeared at Martinez's home but argued that while committing the burglary another person smeared Napier's blood on the door.  (Doc. 6-2 at 327–28, 331–33, 335–36)  Because Napier failed to present evidence to support his theory of innocence, the hypothesis of innocence was unreasonable.  *Huff v. State*, 495 So. 2d 145, 150 (Fla. 1986) ("[I]t is apparent from our review of the entire record that appellant's hypothesis of innocence was simply unreasonable.  No evidence whatsoever was introduced to support appellant's story . . . .").

Even if the hypothesis was reasonable, the prosecutor sufficiently rebutted the hypothesis.  "[W]here the [prosecutor] relies on circumstantial evidence found at a crime scene to establish the defendant's identity, the circumstances must be such that the evidence could have been left only at the time the crime was committed."  *Rivero v. State*, 35 So. 3d 183, 184 (Fla. 3d DCA 2010).  "However, where fingerprints or other evidence is found in an area generally not open to the public, [state courts] have upheld convictions in circumstantial evidence cases."  *Rivero*, 35 So. 3d at 184.

In *Rivero*, 35 So. 3d at 186, a police officer investigated a burglary at a bakery, observed blood on a broken window at the bakery, and observed more blood on the floor inside the bakery. An investigator swabbed blood on the inside of the broken window, and DNA from the blood matched the defendant's DNA. *Rivero*, 35 So. 3d at 185–86. Appellate counsel argued that the prosecutor failed to rebut the hypothesis of innocence that the defendant's blood innocently appeared on the broken window because the window faced an area outside the bakery and open to the public. *Rivero*, 35 So. 3d at 185. The state appellate court rejected the argument because "there [was] record evidence that the defendant's DNA was found and collected from the inside of the window of the bakery, which was smashed during the burglary, in a room not accessible to the public." *Rivero*, 35 So. 3d at 186.

On direct examination, Martinez's son testified that he observed broken glass inside the home, blood on the broken glass, and blood smeared on the outside of the door (Doc. 6-2 at 181):

| [Prosecutor:] | Okay. And you said you observed glass by the back door? |
|---|---|
| [Martinez's son:] | Yes, and on the floor. |
| [Prosecutor:] | Did you see a window broken? |
| [Martinez's son:] | Yes, I did. |
| [Prosecutor:] | What else did you see? |
| [Martinez's son:] | I saw some blood on the actual glass. And then when I went outside, there was blood on the door itself. |
| [Prosecutor:] | Okay. Did it look like fresh blood? |

[Martinez's son:]    Yes, it did.

[Prosecutor:]    Okay. So it was, like, reddish?

[Martinez's son:]    Yes.

[Prosecutor:]    Okay. Was it, like, dripping off the door?

[Martinez's son:]    No. It looked like maybe somebody had their hand on it and smeared it down like that.

On cross-examination, Martinez's son admitted that he did not observe drops of blood inside the home (Doc. 6-2 at 183):

[Trial counsel:]    Just one question —

[Martinez's son:]    Yes.

[Trial counsel:]    — for you today, young man. You didn't see any blood drops in the mobile home, did you, on the floor, on the tile — do you have tile, or do you have linoleum?

[Martinez's son:]    I really don't — I don't remember.

[Trial counsel:]    You don't remember seeing any blood droppings, though, do you?

[Martinez's son:]    No. I know I saw it on the glass, and I know I saw it on the door, which if it was on the glass, it could have been on the floor on the glass itself.

[Trial counsel:]    Not in the house, though, is what I'm getting at.

[Martinez's son:]    No.

[Trial counsel:]    Okay. And this was on the outside where you saw the blood, correct?

[Martinez's son:]    Yes.

On re-direct examination, Martinez's son clarified that he observed blood on shards of glass still attached to the windowsill (Doc. 6-2 at 183–84):

| [Prosecutor:] | Mr. Velez, the glass with the blood on it, was that shards of glass on the broken window? |
|---|---|
| [Martinez's son:] | Yes. |
| [Prosecutor:] | Okay. And then the pieces that were also on the floor? |
| [Martinez's son:] | Yes. |

The back door of Martinez's home did not face an area open to the public. An acre of land surrounded the home, the area was sparsely populated, and the back door, which was about one-hundred-and-fifty feet from the road, faced a wooded area.  (Doc. 6-2 at 179–80)  Reasonable inferences drawn from the evidence, viewed in the light most favorable to the prosecution, proved that Napier broke the window, cut himself on the broken pane while opening the door, smeared his blood on shards of the broken pane and on the outside of the door, and stole the jewelry.

Also, "[i]f fairminded jurists could disagree about the correctness of the state court's decision, then the state court's application of *Strickland* was not unreasonable, and AEDPA precludes the grant of habeas relief."  *Brooks*, 719 F.3d at 1300.  In a concurrence in *Rivero*, 35 So. 3d at 187–88, Judge Alan Schwartz concluded that the presence of the defendant's blood on the broken window sufficiently proved the defendant's guilt:

> [S]ince an opinion has been written, and while it is obvious that
> the defendant's motion for directed verdict was properly
> denied, I think the Court's reliance on the cases which involve
> the location of the defendant's fingerprints which (although

> only in legal theory) could have been innocently left on the
> outside of the site of a break-in is misplaced. In contrast, Rivero
> was identified by blood which was obviously the result of a cut
> on the broken window through which he entered the premises.
> Since that is the case, it doesn't matter whether it was found on
> the outside or inside of the pieces of shattered glass.

Because the prosecutor rebutted Napier's hypothesis of innocence and proved

Napier's guilt, the issue on appeal would not succeed, and the state appellate court

did not unreasonably deny the claim. *Pinkney*, 876 F.3d at 1297. Ground four is

denied.

## VI.  CONCLUSION

Napier's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The

clerk must enter a judgment against Napier and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Napier fails to demonstrate either a substantial showing of the denial

of a constitutional right or that reasonable jurists would debate either the merits of

the grounds or the procedural issues, a certificate of appealability and leave to appeal

*in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 478 (2000). Napier must obtain permission from the court of appeals to appeal

*in forma pauperis*.

ORDERED in Tampa, Florida, on May 21, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE